**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RICHARD H. RUEBE, JEFFREY W. LEMAJEUR, VINCENT J. KWASNIEWSKI AND NEAL T. JAKEL, ) ) ) ) | |
| Plaintiffs, ) | **JURY TRIAL DEMANDED** |
| ) | |
| v. ) | Case No. _____ |
| ) | |
| ) | |
| NEXUS EXECUTIVE RISKS LTD., ) PARTNERRE IRELAND INSURANCE LTD., ) AMTRUST FINANCIAL SERVICES, INC., ) AXIS SPECIALTY EUROPE SE AND ) LLOYD'S SYNDICATE 1221 NAV ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | |

**COMPLAINT**

Plaintiffs Richard H. Ruebe, Jeffrey W. Lemajeur, Vincent J. Kwasniewski and Neal T. Jakel, by and through their undersigned attorneys, for their Complaint against Defendants Nexus Executive Risks Ltd., PartnerRe Ireland Insurance Ltd., AMTrust Financial Services, Inc., Axis Specialty Europe SE and Lloyd's Syndicate 1221 NAV hereby allege as follows:

**NATURE OF THE ACTION**

1.      In this action, plaintiffs Richard H. Ruebe, Jeffrey W. Lemajeur, Vincent J. Kwasniewski and Neal T. Jakel (collectively, "Plaintiffs" or "Individual Insureds") seek a declaration that defendants, Nexus Executive Risks Ltd., PartnerRe Ireland Insurance Ltd., AMTrust Financial Services, Inc. (formerly Lloyd's Syndicate 1861 ANV), AXIS Specialty Europe SE and Lloyd's Syndicate 1221 NAV (collectively, "Defendants"), are contractually required to provide excess insurance coverage to the Individual Insureds in the litigation

1

captioned *Schultz, et. al. v. Sinav Ltd., et al.*, Case No. 2014 L 15, which is currently pending in the Circuit Court for the Fifteenth Judicial Circuit, Ogle County, Illinois (the "Underlying Action"), upon exhaustion of the primary insurer's coverage limits.  The Individual Insureds also bring claims for anticipatory breach of contract and breach of contract as Defendants have repeatedly and unequivocally refused to provide coverage to the Individual Insureds for the claims in the Underlying Action, including by refusing to participate in settlement negotiations during a court-ordered mediation held in the Underlying Action, which prevented the parties from engaging in meaningful settlement negotiations and/or reaching an agreement to resolve that matter.  Finally, the Individual Insureds seek statutory penalties, attorneys' fees and costs pursuant to Section 155 of the Illinois Insurance Code (215 ILCS 5/155) as a result of Defendants' vexatious and unreasonable conduct in denying coverage.

2.     The relevant events and facts underlying the Individual Insureds' claims against Defendants are as follows:

a.     On February 16, 2014, Sinav Limited ("Sinav"), then the parent of Illinois River Energy Holdings, LLC ("IREH"), purchased three layers of directors' and officers' liability insurance for the benefit of Sinav and its subsidiaries, including IREH, from Lloyd's Syndicate 2003 SJC (the "First Layer") and the Defendants (the "Second Layer" and "Third Layer," collectively the "Excess Layers") (collectively the First Layer, Second Layer and Third Layer are referred to as the "Insurance Policies").

b.     On May 20, 2014, the Underlying Action was filed against the Individual Insureds, among other defendants.  Because the Individual Insureds are each former managers of IREH and the Underlying Action alleges claims based upon purported misconduct in their capacities as managers of IREH, the Individual Insureds

2

are expressly covered by the Insurance Policies in connection with the Underlying Action.

c. Lloyd's Syndicate 2003 SJC has complied with its obligations under the Insurance Policies and provided the First Layer of coverage for the Individual Insureds in the Underlying Action since it was filed over three years ago. However, the Individual Insureds' defense costs are now approaching and will soon exceed the First Layer's liability limitation.

d. The Individual Insureds have tendered the claim in the Underlying Action to Defendants (on multiple occasions) and demanded the Defendants to provide a defense, indemnity, and cover any losses in excess of the First Layer under the terms of the Insurance Policies. The Individual Insureds have further requested that Defendants participate in settlement discussions by attending a court-ordered mediation which was held on May 25, 2017 in the Underlying Action. Defendants refused each of these requests and made unequivocally clear that it is their position that they do not have an obligation to provide Excess Layers of coverage under the terms of the Insurance Policies – notwithstanding the fact that the First Layer has already provided coverage based upon the same application and policy terms.

3. For the reasons set forth herein, Defendants are required to cover the Individual Insureds' losses in excess of the First Layer in the Underlying Action, including defense costs, damages awards and settlement costs within the applicable liability limitations for the Excess Layers. Judgment should therefore be entered in favor of the Individual Insureds, and against Defendants, with respect to each of the counts in this Complaint.

3

## PARTIES

4.      Plaintiff Richard H. Ruebe served as the CEO and member of the board of managers of IREH (formerly known as Illinois River Energy, LLC) from 2006 until June 3, 2014.  Mr. Ruebe is domiciled in San Antonio, Texas.

5.      Plaintiff Jeffrey W. Lemajeur became IREH's CFO and joined IREH's board of managers in 2010.  Mr. Lemajeur served in these roles until June 3, 2014.  Mr. Lemajeur is domiciled in Arlington Heights, Illinois.

6.      Plaintiff Vincent J. Kwasniewski became IREH's Chief Operating Officer in 2007 until leaving that position to become IREH's Commercial Director in 2010.  Mr. Kwasniewski joined IREH's board of managers in January 2012.  Mr. Kwasniewski served in these roles until June 3, 2014.  Mr. Kwasniewski is domiciled in Glenview, Illinois.

7.      Plaintiff Neal T. Jakel became Illinois River Energy, LLC's General Manager in February 2010 and joined IREH's board of managers in January 2012.  Mr. Jakel served in these roles until June 3, 2014.  Mr. Jakel is domiciled in Cedar Rapids, Iowa.

8.      Defendant Nexus Executive Risks Ltd. is a private limited company organized under the laws of, and has its principal place of business in, the United Kingdom.

9.      Defendant AmTrust Financial Services, Inc. is a corporation organized under the laws of Delaware, and has its principal place of business in New York.  AmTrust Financial Services, Inc. regularly transacts business in Illinois.  On information and belief, in November 2016 AmTrust Financial Services, Inc. purchased Lloyd's Syndicate 1861 ANV.

10.     Defendant Lloyd's Syndicate 1221 NAV is a private limited company organized under the laws of, and with its principal places of business in, the United Kingdom.

4

11. Defendant PartnerRe Ireland Insurance Limited DAC is a private limited company organized under the laws of, and with its principal place of business in, Ireland.

12. Defendant Axis Specialty Europe SE is a public limited company organized under the laws of, and with its principal place of business in, Ireland.

### JURISDICTION AND VENUE

13. Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 (a)(3) because: (1) there is complete diversity of U.S. citizenship between Plaintiffs Lemajeur, Kwasniewski, Jakel and Ruebe, and Defendant AmTrust, the only U.S.-based defendant; and (2) the amount in controversy exceeds $75,000.

14. With respect to the complete diversity of U.S. citizenship:

   a. Plaintiffs Lemajeur and Kwasniewski are citizens of Illinois. Plaintiff Jakel is a citizen of Iowa. Plaintiff Ruebe is a citizen of Texas.

   b. Defendant AmTrust is a citizen of Delaware and New York. Defendants Nexus Executive Risks Ltd., Lloyd's Syndicate 1221 NAV, PartnerRe Ireland Insurance Limited DAC, and Axis Specialty Europe SE are each citizens of foreign nations.

15. With respect to the amount in controversy, in actions for declaratory judgment, the amount in controversy is measured by the value of the object of the litigation. The potential losses in the Underlying Action far exceed $75,000 because Defendants are obligated to cover any litigation costs, damages award or settlement costs within the Excess Layers. The plaintiffs in the Underlying Action have claimed damages amounting to between $44 million and $64 million. In any event, the Individual Insureds' defense costs are likely to exceed the

coverage provided by the First Layer by more than $75,000 in the near future given the complexity and present status of the Underlying Action.

16.     This Court has personal jurisdiction over all Defendants because Defendants consented to jurisdiction by entering into the Insurance Policies, each of which states, "with regards to individual insured persons of the policyholder/company situated in the United States of America, each party agrees to submit to any competent court of the United States of America." (Exhibit B at ¶ 5.22.)

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, as did the events giving rise to the Underlying Action; and/or pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to personal jurisdiction in this district with respect to this action.

## FACTUAL ALLEGATIONS

### A.     The Insurance Policies

18.     On January 8, 2014, Sinav submitted an application for purchase of the Insurance Policies on behalf of itself and all of its subsidiaries (the "Application").  A true and correct copy of the Application is attached hereto as Exhibit A.

19.     On February 16, 2014, Sinav purchased the Insurance Policies on behalf of itself and all of its subsidiaries, including IREH.  The Insurance Policies provide three distinct coverage layers of directors' and officers' liability insurance to Sinav, its subsidiaries, and the current and former directors and officers of Sinav and its subsidiaries, including IREH's former directors and officers.  The period of insurance covered by the Insurance Policies was from February 16, 2014 through February 16, 2015.

20.     The First Layer of directors' and officers' liability insurance is provided by Lloyd's Syndicate 2003 SJC under the policy contract numbered PE 1400606 (the "First Layer Policy").  The First Layer has a liability limit of $5 million, which reduces with defense costs.  A true and correct copy of the First Layer Policy is attached hereto as Exhibit B.

21.     The Second Layer of directors' and officers' liability insurance is provided by Defendant Nexus Executive Risks Ltd. ("Nexus"), for and on behalf of Defendant  PartnerRe Ireland Insurance Ltd ("PartnerRe"), and Defendant AmTrust Financial Services, Inc., formerly known as Lloyd's Syndicate 1861 ANV ("AmTrust") (collectively the "Second Layer Defendants") under the policy contract numbered PE 1400607 (the "Second Layer Policy").  The Second Layer is triggered upon the First Layer's coverage limit being exhausted, and has a liability limit of $10,000,000, which reduces with defense costs.  A true and correct copy of the Second Layer Policy is attached hereto as Exhibit C.

22.     The Third Layer of directors' and officers' liability insurance is provided by AXIS Specialty Europe SE and Lloyd's Syndicate 1221 NAV (collectively the "Third Layer Defendants") under the policy numbered PE 1400608 (the "Third Layer Policy").  The Third Layer is triggered when the coverage limits of both the First Layer and the Second Layer have been exhausted, and has a liability limit of $10,000,000, which reduces with defense costs.  A true and correct copy of the Third Layer Policy is attached hereto as Exhibit D.

23.     In relevant part, the Second Layer Policy and the Third Layer Policy (collectively the "Excess Policies") each provides $10 million in coverage for directors' and officers' liability once the coverage limit of the First Layer, which is $5 million, is exhausted. Among other forms of coverage, the First Layer and the Excess Policies provide coverage for former directors' and officers' "losses," which include defense costs, damages awards, and

settlement costs of claims against former directors and officers of Sinav or its subsidiaries, including IREH.

24.     Sinav paid all premiums on the Insurance Policies and has fully complied with the terms of the Insurance Policies.

**B.**     **The Underlying Action**

25.     On May 20, 2014, the Underlying Action was filed against the Individual Insureds, among other defendants, in connection with the IREH majority unitholder's buyout of the IREH minority unitholders.

26.     IREH was a Delaware limited liability company that owned and operated an ethanol plant in Rochelle, Illinois. IREH's business was managed and controlled by a board of managers. During the applicable period, each Plaintiff was a manager on IREH's board, which was comprised of seven managers. In 2012, the seven members of the IREH board of managers were the four Individual Insureds, who were affiliated with IREH's majority unitholder, and the three named plaintiffs in the Underlying Action—Stanley Blunier, Floyd Schultz and Brad Riskedal—who were minority unitholders.

27.     The Underlying Action alleges two causes of action against the Individual Insureds in their capacity as managers of IREH: (i) breach of IREH's LLC agreement (the "LLC Agreement"), and (ii) breach of fiduciary duties. The claims in the Underlying Action allegedly arise from the Individual Insureds' approval of the buyout of the minority units in IREH and the resulting merger of IREH with a subsidiary of IREH's majority owner on January 30, 2012 (the "Minority Buyout"). The complaint in the Underlying Action, which has been brought as a class action on behalf of all of IREH's former minority unitholders, alleges that the Minority Buyout price of $1.10 per unit was too low. The Underlying Action includes requests for compensatory

8

damages as well as rescissory damages, which the plaintiffs in the Underlying Action claim amount to between $44 million and $64 million.

28.     The Individual Insureds deny the claims alleged in the Underlying Action and have sought dismissal of the action based on the fact that they fully complied with the standards of conduct set forth in IREH's LLC Agreement and all applicable laws in connection with the buyout.

29.     The Individual Insureds' compliance with the LLC Agreement and applicable laws is demonstrated, for example, by the following:  (i) the LLC Agreement, which was approved by IREH's unitholders, authorized and allowed the IREH board of managers to complete a minority buyout; (ii) the IREH board of managers, guided by outside counsel, approved the Minority Buyout at the price calculated by an independent valuation firm; and (iii) the terms of the LLC Agreement bar the minority unitholders' claims seeking to contest the value of the buyout.

C.     **Obligation to Provide Coverage for Losses in the Underlying Action**

30.     Under the terms of the Insurance Policies, the Individual Insureds are entitled to coverage of all losses they incur resulting from the Underlying Action within the applicable liability limits for each layer of coverage.

31.     The Insurance Policies require each of the insurance providers to "pay the loss of each insured person due to any wrongful act" in accordance with the liability limits of each of the policies.  (Exhibit B at § 1.1(i).[1])  The term "loss" is further defined by the Insurance

---

[1] The First Layer Policy, which is numbered PE1400606 (attached as Exhibit B), sets forth detailed terms regarding the insurance agreement.  The Second Layer Policy and Third Layer Policy, which are numbered PE1400607 and PE1400608, respectively (attached as Exhibits C & D), incorporate the terms of the First Layer Policy by reference.

Policies to include any and all defense costs, damages award(s), and settlement costs. (Exhibit B at § 3.21.)

32. As former managers of IREH, a subsidiary of Sinav, the Individual Insureds constitute "insured persons" under the Insurance Policies.

33. The Underlying Action alleges misconduct by the Individual Insureds in their capacities as managers of IREH, which constitutes a "wrongful act" under the Insurance Policies.

34. The defense costs incurred by the Individual Insureds, as well as any damages award and/or settlement costs that may be incurred by the Individual Insureds, constitute "losses" under the Insurance Policies.

       **D.**       **First Layer's Provision of Coverage under the Insurance Policies**

35. After the Underlying Action was filed, the Individual Insureds contacted Lloyd's Syndicate 2003 SJC, which is the entity responsible for providing the First Layer, and tendered the claim of the Underlying Action to the First Layer seeking coverage within the liability limits of that policy.

36. On July 10, 2014, an agent of Lloyd's Syndicate 2003 SJC accepted the Individual Insureds' tender and agreed to provide the First Layer of coverage and to defend the Individual Insureds in the Underlying Action in accordance with the terms of the Insurance Policies.

37. Beginning on that date and continuing through the date of this filing, Lloyd's Syndicate 2003 SJC has provided coverage and paid for defense costs incurred by the Individual Insureds in the Underlying Action.

E.     **Defendants' Wrongful Refusal to Provide Coverage for Excess Layers**

38.     The Individual Insureds further tendered the claim of the Underlying Action to the Defendants in order to confirm that they would provide a defense, indemnity, and cover any losses of the Individual Insureds within the liability limits of the Excess Policies.

39.     On September 2, 2014, Defendant PartnerRe and Lloyd's (which later merged with Defendant AmTrust), sent correspondence to the Individual Insureds on behalf of "the excess layer insurers" in which they refused to cover any of the Individual Insureds' losses, including its defense, in the Underlying Action.  A true and correct copy of the September 2, 2014 letter is attached hereto as Exhibit E.

40.     The Individual Insureds and Defendants engaged in further correspondence through their respective representatives and counsel with respect to the Individual Insureds' coverage demand and Defendants' refusal to grant coverage under the Excess Policies.  True and correct copies of correspondence between the parties dated September 23, 2014, November 25, 2014, January 13, 2015, April 17, 2017, April 27, 2017, May 16, 2017, and May 19, 2017 are attached hereto as Exhibits F – L, respectively.

41.     In the above-referenced correspondence, the Individual Insureds tendered a claim to Defendants seeking coverage in the Underlying Action within the applicable liability limitations for the Excess Layers.  In response, Defendants have absolutely and unequivocally made clear that they will not grant coverage under the Excess Policies for any defense, indemnity or losses incurred by the Individual Insureds in connection with the Underlying Action.

42.     In the above-referenced correspondence dated April 27, 2017, May 16, 2017, and May 19, 2017, the Second Layer Defendants and the Third Layer Defendants also rejected the Individual Insureds' request to participate in settlement discussions in the

Underlying Action by attending a court-ordered mediation to be held on May 25, 2017. The mediation was held on May 25, 2017, and did not result in settlement of the Underlying Action. Defendants' refusal to attend the mediation and participate in the settlement discussions prevented the parties from engaging in meaningful settlement negotiations and/or reaching an agreement to resolve the Underlying Action.

43. Defendants have never disputed that the Individual Insureds' claim qualifies for coverage under the terms of the Insurance Policies. Specifically:

a. Defendants have never disputed that the Individual Insureds properly tendered the claim of the Underlying Action to Defendants.

b. Defendants have never disputed that the Insurance Policies require Defendants to "pay the loss of each insured person due to any wrongful act" in accordance with the liability limits of the Second Layer Policy and Third Layer Policy, respectively.

c. Defendants have never disputed that, as former managers of IREH, a subsidiary of Sinav, the Individual Insureds constitute "insured persons" under the Insurance Policies.

d. Defendants have never disputed that the Underlying Action alleges misconduct by the Individual Insureds in their capacities as managers of IREH, which constitute "wrongful acts" under the Insurance Policies.

44. Instead, Defendants have stated that their refusal to cover losses arising from the Underlying Action is based upon Sinav's purported misrepresentation in its Application dated January 8, 2014. In the Application, Sinav stated, on behalf of itself and its subsidiaries, that it was not aware "of any circumstance or incident which may give rise to a claim against any

Director or Officer of [Sinav and its subsidiaries, including IREH] in such capacity." (Exhibit A at pg. 3.) Defendants claim that this statement was a misrepresentation because, according to Defendants, Sinav was allegedly aware when it submitted the Application that the Underlying Action could be filed against Sinav and the Individual Insureds. As a result, Defendants contend that their duty to provide coverage to the Individual Insureds was discharged based upon this purported misrepresentation.

45.     Defendants have no valid basis for denying coverage to the Individual Insureds under the Excess Policies on the basis of the allegations described in the preceding paragraph 44.

46.     **First**, the statement in the Application that Sinav and its subsidiaries (including IREH) were "not aware of any circumstance or incident which may give rise to a claim against any director or officer of the Company" was in fact true and accurate at the time it was made.

47.     Under the Insurance Policies, a "circumstance" is defined as "any fact, circumstance or event which an insured **may believe** could give rise to a claim." (Exhibit B, § 3.3 (emphasis added).)

48.     Contrary to Defendants' assertions, Sinav and its subsidiaries (including IREH) had no reason to "believe" that minority unitholders would bring a claim related to the Minority Buyout, or that the Minority Buyout may give rise to a claim against any director or officer of the Company, when it completed the Application on January 8, 2014. This conclusion is confirmed by all available facts and evidence, including for example:

a.     Plaintiff Jeffrey Lemajeur, the CFO of IREH who completed the Application on behalf of Sinav and its subsidiaries, has confirmed that these entities had

no reason to know or believe that minority unitholders would bring a claim as a result of the Minority Buyout when he submitted the Application on January 8, 2014.

        b.     By the time that the Application was filed, two years had passed since completion of the Minority Buyout, during which time the minority unitholders had taken no legal action with regard to the Minority Buyout.

        c.     Upon completion of the Minority Buyout, each of the IREH minority unitholders (including the named plaintiffs in the Underlying Action) tendered their IREH units and accepted payment for the units pursuant to the terms of the Minority Buyout.

        d.     At the time that the Application was filed on January 8, 2014, the Underlying Action had not been filed.  No representative of Sinav or its subsidiaries (including IREH) had any reason to know or believe that minority unitholders would bring a claim related to the Minority Buyout until the Underlying Action was actually filed on May 20, 2014—five (5) months after submission of the Application.

        e.     Although certain minority unitholders had expressed dissatisfaction with the Minority Buyout in the first quarter of 2012, by the end of the 2012—and certainly by January 2014—the minority unitholders gave no indication that they would pursue legal action related to the Minority Buyout.

        f.     To the contrary, after the Minority Buyout had been completed, multiple minority unitholders had expressly informed Individual Insureds Lemajeur and Ruebe that the minority unitholders had no intent to bring any legal action relating to the Minority Buyout.  For instance, after the Minority Buyout was approved in January 2012, Mr. Ruebe met with the largest minority unitholder of IREH who expressly advised Mr.

Ruebe that he did not intend to pursue legal action relating to the Minority Buyout. In addition, Mr. Lemajeur spoke with several minority unitholders in early 2012, who advised him that numerous minority unitholders had recently met with independent legal counsel and thereafter agreed not to bring any claims relating to the Minority Buyout. Finally, Mr. Lemajeur spoke with several additional minority unitholders in 2012 who likewise advised him that they had no intent to bring any claims relating to the Minority Buyout.

g.      The named plaintiffs in the Underlying Action have confirmed that neither Sinav, its subsidiaries (including IREH) nor the Individual Insureds could have known about the potential existence of any claim relating to the Minority Buyout in January 2014 when the Application was submitted.

h.      The named plaintiffs in the Underlying Action have admitted that they had no intent to file the Underlying Action until February 2014 at the earliest—based upon information that had just come into their possession—after the Application had already been submitted.

i.      The named plaintiffs in the Underlying Action have further testified in depositions and made numerous representations in court filings that they only became aware of the possible existence of their claims relating to the Minority Buyout after they purportedly received certain information (a draft valuation of IREH) from an alleged anonymous source in February 2014.[2]  The draft valuation of IREH that the anonymous source sent had been prepared at a different time and using different projections than the valuation that was ultimately used to calculate the Minority Buyout

---

[2] The defendants in the Underlying Action dispute that the information purportedly received from this anonymous source is accurate or admissible in that proceeding.

price. It thus had—and has—no relevance to the Minority Buyout price. Despite the fact that the draft valuation of IREH was irrelevant to calculating the Minority Buyout price, the named plaintiffs in the Underlying Action have repeatedly represented that their receipt of the draft valuation was the reason that they brought claims against Sinav, the Individual Insureds, and other defendants. None of the Plaintiffs were made aware that this alleged anonymous source purportedly had sent this information to the named plaintiffs in the Underlying Action until after that case was filed in May 2014.

j.     Finally, Sinav and its subsidiaries had had no reason to believe or know that the minority unitholders might file any claims against the Sinav, IREH and/or any of the Individual Insureds related to the Minority Buyout because the Individual Insureds fully complied with the standards of conduct set forth in the LLC Agreement and all applicable laws in connection with the Minority Buyout, and cannot be held liable under any of the alleged claims asserted in the Underlying Action for the reasons described in paragraph 29 above.

49.    ***Second***, Defendants have refused coverage despite the fact that the Insurance Policies contain a "non-rescindable clause," which states that "the Insurer irrevocably waives any right it may have to rescind this policy on the grounds of non-disclosure or misrepresentation." (Exhibit B, § 5.3.) Under the non-rescindable clause, Defendants are foreclosed from rescinding coverage under the Insurance Policies on the basis of an omission or misrepresentation—which is precisely what Defendants are seeking to do in denying coverage to the Individual Insureds for the Underlying Action. Given the inclusion of the "non-rescindable clause" in the Insurance Policies, Defendants have no valid basis for denying such coverage.

50.     The Individual Insureds have provided the above-referenced information and evidence to Defendants in response to their denial of insurance coverage.  (*See*, *e.g.*, Exhibits F & I.)  Nevertheless, Defendants have absolutely and unequivocally stated that they will not grant coverage under the Excess Policies for any losses incurred by the Individual Insureds in connection with the Underlying Action.

51.     For the reasons set forth herein, Defendants have no valid basis for refusing coverage to the Individual Insureds in the Underlying Action.

**F.**     **Exhaustion of First Layer**

52.     The Individual Insureds have defended against the Underlying Action since it was filed, including by briefing motions to dismiss, engaging in discovery, and briefing and arguing cross-motions for summary judgment.

53.     As described in paragraphs 35 through 37 above, Lloyd's Syndicate 2003 SJC has been providing the First Layer of coverage in accordance with the terms of the Insurance Policies by paying for the costs of defending the Individual Insureds in the Underlying Action. Since the Underlying Action was filed on May 20, 2014, the Individual Insureds' defense costs are nearing the First Layer's coverage limits.

54.     Given the complexity and present status of the Underlying Action, as well as the likelihood that the matter will proceed to trial and/or require further expert testimony including on the issue of valuation, there is a very strong likelihood that the $5 million limit of the First Layer will be reached in the near future.  Consequently, the Individual Insureds will require the Second Layer and Third Layer of coverage in order to defend themselves leading up to and at trial in the Underlying Action.

55.     The Individual Insureds will further require the Second Layer and Third Layer of coverage in order to pay for the costs of any settlement or damage award in the Underlying Action.  As described in paragraph 42 above, the Defendants' refusal to attend the court-ordered mediation and participate in settlement discussions in the Underlying Action has prevented the parties from engaging in meaningful settlement negotiations and/or reaching an agreement to resolve that matter.

## COUNT I
## DECLARATORY JUDGMENT

56.     The Individual Insureds repeat and reallege the allegations set forth in paragraphs 1 through 55 above and incorporate them into this Count as if fully set forth herein.

57.     There presently is an actual, genuine and existing controversy between the Individual Insureds and Defendants, namely, whether Defendants have a duty under the terms of the Excess Policies to provide coverage to the Individual Insureds for losses incurred in the Underlying Action.

58.     The Excess Policies are valid and enforceable written contracts.

59.     The Individual Insureds have fully complied with the terms of the Excess Policies, and shall continue to fully comply with the terms of the Excess Policies in the future.

60.     The Individual Insureds properly tendered a claim to Defendants under the terms of the Excess Policies seeking coverage for losses incurred by the Individual Insureds in connection with the Underlying Action, including defense costs, damages awards and settlement costs within the applicable liability limitations for the Excess Layers.

61.     Defendants have failed to, and refused to, accept the tender of coverage by the Individual Insureds in violation of the terms of the Excess Policies.

62.     Defendants have expressly repudiated their coverage obligations by explicitly, repeatedly and wrongfully maintaining that they will not provide coverage to the Individual Insureds in the Underlying Action.

63.     Under the plain terms of the Excess Policies, Defendants have a contractual duty to provide coverage to the Individual Insureds for losses incurred in the Underlying Action, including defense costs, damages awards and settlement costs within the applicable liability limitations for the Excess Layers.

64.     Defendants have no valid basis for refusing to provide coverage to the Individual Insureds in the Underlying Action under the terms of the Excess Policies.

65.     The Individual Insureds are currently incurring significant defense costs in connection with the Underlying Action.  The Individual Insureds' defense costs are nearing the available limits of coverage under the First Layer, and there exists a strong likelihood that the Individual Insureds will exceed the limits of coverage under the First Layer before judgment in the Underlying Action has been rendered – thus requiring payments for defense costs to be made by Defendants under the Excess Policies.

66.     There is also a strong likelihood that the Individual Insureds will require payments to be made by Defendants for the Second Layer and Third Layer of coverage in order to pay for the costs of any settlement or damage award in the Underlying Action.

67.     Defendants' refusal to provide coverage and participate in settlement discussions (including at the court-ordered mediation held on May 25, 2017) has further prevented and will continue to prevent the parties from engaging in meaningful settlement negotiations and/or reaching an agreement to resolve the Underlying Action.

68.     The Individual Insureds request that the Court declare, pursuant to 28 U.S.C. § 2201, that Defendants have a duty to provide coverage to the Individual Insureds for losses incurred in connection with the Underlying Action, including defense costs, damages awards and settlement costs within the applicable liability limitations for the Excess Layers.

69.     The declaratory relief requested herein is urgently required because the resolution of this action will clarify and resolve the relative rights and obligations between the Individual Insureds and Defendants, which will materially impact the Individual Insureds' ability to continue to defend the Underlying Action and/or the ability to negotiate a settlement to resolve the Underlying Action.

WHEREFORE, by this Complaint, Plaintiffs Richard H. Ruebe, Jeffrey W. Lemajeur, Vincent J. Kwasniewski and Neal T. Jakel request the Court enter judgment in their favor, pursuant to the Federal Declaratory Judgment Act (28 U.S.C. § 2201, *et seq.*), as follows:

A.  Declaring that Defendants have a duty under the Excess Policies to cover the Individual Insureds' losses in the Underlying Action, including defense costs, damages awards and settlement costs, within the applicable liability limitations for the Excess Layers.

B.  Declaring that Defendants have breached the Excess Policies;

C.  Awarding Individual Insureds reasonable costs and fees incurred in pursuit of this action, including attorneys' fees; and

D.  Awarding such other relief as the Court deems just and proper.

## COUNT II
## ANTICIPATORY BREACH OF CONTRACT

70.     The Individual Insureds repeat and reallege the allegations set forth in paragraphs 1 through 55 above and incorporate them into this Count as if fully set forth herein.

71.     The Excess Policies are valid and enforceable written contracts.

72. The Individual Insureds have fully complied with the terms of the Excess Policies, and shall continue to fully comply with the terms of the Excess Policies in the future.

73. The Individual Insureds properly tendered a claim to Defendants under the terms of the Excess Policies seeking coverage by Defendants for losses incurred by the Individual Insureds in connection with the Underlying Action.

74. Under the plain terms of the Excess Policies, Defendants have a contractual duty to provide coverage to the Individual Insureds in the Underlying Action.

75. Defendants have failed to, and refused to, accept the tender of coverage by the Individual Insureds in violation of the terms of the Excess Policies.

76. As described in detail in paragraphs 38 through 51 above, Defendants have explicitly, repeatedly and wrongfully maintained that they will not provide coverage to the Individual Insureds for losses arising out of the claims in the Underlying Action.

77. Defendants' clear and repeated denials of coverage manifested their absolute and unequivocal intention not to perform their contractual obligations under the Excess Policies.

78. The Individual Insureds will be damaged as a result of Defendants' breach of the Excess Policies.

79. The Individual Insureds therefore possess the right to treat Defendants' actions as an immediate and anticipatory breach of the Excess Policies.

WHEREFORE, by this Complaint, Plaintiffs Richard H. Ruebe, Jeffrey W. Lemajeur, Vincent J. Kwasniewski and Neal T. Jakel request the Court enter judgment in their favor, as follows:

      A. Awarding the Individual Insureds compensatory damages in an amount to be determined at trial;

B.  Awarding the Individual Insureds reasonable costs and fees incurred in pursuit of this action, including attorneys' fees; and

C.  Awarding such other relief as the Court deems just and proper.

**COUNT III**
**BREACH OF CONTRACT**

80.     The Individual Insureds repeat and reallege the allegations set forth in paragraphs 1 through 55 above and incorporate them into this Count as if fully set forth herein.

81.     The Excess Policies are valid and enforceable written contracts.

82.     The Individual Insureds have fully complied with the terms of the Excess Policies, and shall continue to fully comply with the terms of the Excess Policies in the future.

83.     The Individual Insureds properly tendered a claim to Defendants under the terms of the Excess Policies seeking coverage by Defendants for losses incurred by the Individual Insureds in connection with the Underlying Action.

84.     Under the plain terms of the Excess Policies, Defendants have a duty to provide coverage to the Individual Insureds in the Underlying Action.

85.     Defendants have failed to, and refused to, accept the tender of coverage by the Individual Insureds in violation of the terms of the Excess Policies.

86.     Pursuant to the terms of the Excess Policies, Defendants have a duty to provide coverage for and/or participate in settlement negotiations in the Underlying Action, as the resolution of the Underlying Action involved or appeared reasonably likely to involve the coverage limits of the Second Layer Defendants and the Third Layer Defendants, subject to their respective liability limits.

87.     On April 17, 2017, the Individual Insureds submitted a formal request for Defendants to participate in settlement discussions in the Underlying Action by attending a

court-ordered mediation to be held on May 25, 2017. In correspondence dated April 27, 2017 and May 16, 2017, respectively, the Second Layer Defendants and the Third Layer Defendants rejected the Individual Insureds' request for Defendants to participate in and/or attend the court-ordered mediation.

88.    Defendants refused to attend, participate in and/or provide coverage for the Individual Insureds at the court-ordered mediation held on May 25, 2017 in violation of the terms of the Excess Policies.

89.    Defendants' refusal to attend, participate in and/or provide coverage for the Individual Insureds at the court-ordered mediation prevented the parties from engaging in meaningful settlement negotiations and/or reaching an agreement to resolve the Underlying Action.

90.    The Individual Insureds have incurred damages, and will continue to incur damages, as a direct and proximate result of Defendants' breaches of the Excess Policies.

WHEREFORE, by this Complaint, Plaintiffs Richard H. Ruebe, Jeffrey W. Lemajeur, Vincent J. Kwasniewski and Neal T. Jakel request the Court enter judgment in their favor, as follows:

A. Awarding the Individual Insureds compensatory damages in an amount to be determined at trial;

B. Awarding the Individual Insureds reasonable costs and fees incurred in pursuit of this action, including attorneys' fees; and

C. Awarding such other relief as the Court deems just and proper.

## COUNT IV
## FOR DAMAGES PURSUANT TO 215 ILCS 5/155

91.     The Individual Insureds repeat and reallege the allegations set forth in paragraphs 1 through 90, including those allegations set forth in Counts I, II and III above, and incorporate them into this Count as if fully set forth herein.

92.     Section 155 of the Illinois Insurance Code (215 ILCS 5/155) provides, in relevant part:

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney's fees, other costs, plus an amount not to exceed any one of the following amounts:
>
> (a)     60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
>
> (b)     $60,000;
>
> (c)     The excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

93.     Defendants have a duty to provide coverage to the Individual Insureds in the Underlying Action under the plain terms of the Excess Policies.

94.     Notwithstanding this duty, Defendants have explicitly and repeatedly stated that they will not provide coverage under the Excess Policies for any losses incurred by the Individual Insureds in connection with the Underlying Action, and further refused to participate in settlement discussions at the court-ordered mediation held on May 25, 2017 in the Underlying Action.

95.     Defendants have no valid basis for refusing to provide coverage to the Individual Insureds in the Underlying Action under the terms of the Excess Policies.

96.     Defendants have refused to provide coverage to the Individual Insureds in the Underlying Action despite the clear evidence contradicting Defendants' purported basis for denying coverage and the fact that the First Layer has already provided coverage based upon the same application and policy terms.

97.     Defendants' denial of coverage is wrongful, vexatious, unreasonable and in violation of Section 155 of the Illinois Insurance Code, 215 ILCS 5/155.

WHEREFORE, by this Complaint, Plaintiffs Richard H. Ruebe, Jeffrey W. Lemajeur, Vincent J. Kwasniewski and Neal T. Jakel request the Court enter judgment in their favor on Counts I, II and III and further award damages pursuant to 215 ILCS 5/155, including but not limited to:

    A.  Attorneys' fees and costs; plus

    B.  An amount not to exceed:

        i.  60% of the amount which the court or jury finds such party is entitled to recover against Defendants; or

        ii.  $60,000; and

    C.  Awarding such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Richard H. Ruebe, Jeffrey W. Lemajeur, Vincent J. Kwasniewski and Neal T. Jakel respectfully request that this Court grant them the relief requested herein.

## JURY TRIAL DEMAND

Plaintiffs Richard H. Ruebe, Jeffrey W. Lemajeur, Vincent J. Kwasniewski and Neal T. Jakel hereby exercise their right to demand to a jury trial with respect to all claims asserted and all relief requested herein pursuant to Federal Rule of Civil Procedure 38.

Dated: February 15, 2018                Respectfully submitted,

By:  /s/ *Erik J. Ives*              

        Erik J. Ives (ARDC #6289811)
        eives@foxswibel.com
        Daniel A. Dorfman (ARDC #6286059)
        ddorfman@foxswibel.com
        Martin B. Carroll (ARDC #6200977)
        mcarroll@foxswibel.com
        Fox Swibel Levin & Carroll LLP
        200 W. Madison St., Suite 3000
        Chicago, IL 60606

        ***Counsel for Plaintiffs Richard H. Ruebe,***
        ***Jeffrey W. Lemajeur, Vincent J.***
        ***Kwasniewski and Neal T. Jakel***

26