**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD H. RUEBE, JEFFREY W. LEMAJEUR, VINCENT J. KWASNIEWSKI AND NEAL T. JAKEL, Plaintiffs, | ) | **JURY TRIAL DEMANDED** |
| v. | ) | Case No. 18-cv-01192 |
| BOTHNIA INTERNATIONAL INSURANCE COMPANY LIMITED, ANV CORPORATE NAME LIMITED, AXIS SPECIALTY EUROPE SE AND NAVIGATORS UNDERWRITING AGENCY LIMITED FOR AND ON BEHALF OF THE UNDERWRITING MEMBERS OF SYNDICATE 1221 AT LLOYD'S FOR THE 2014 YEAR OF ACCOUNT Defendants. | ) | Hon. J. Steven C. Seeger<br>Hon. Mag. J. Jeffrey Cole |

**CONSOLIDATED BRIEFING OF PARTIES ON PENDING DISPUTE AS TO STAY OF LITIGATION**

Plaintiffs Richard H. Ruebe, Jeffrey W. Lemajeur, Vincent J. Kwasniewski and Neal T. Jakel ("Plaintiffs"), and defendants Bothnia International Insurance Company Limited, and ANV Corporate Limited the Underwriting Member of ANV Syndicate 1861 at Lloyd's for the 2014 Year of Account (together, the "Second Layer Defendants") (collectively the "Parties"), by and through their respective undersigned counsel, hereby submit this consolidated briefing regarding the parties' dispute as to a further stay of the above-captioned case.[1]

## INTRODUCTION

This insurance coverage litigation has been stayed since November 7, 2022, by request of the Parties and order of this Court. The stay initially was entered pending completion of the trial

[1] This consolidated briefing is being submitted in accordance with the Joint Status Report filed on May 26, 2026 (Dkt. No. 277).

court proceedings in the Underlying Action, and was thereafter continued by agreement of the Parties and approval of the Court pending completion of the appeal in the Underlying Action (which resulted in reversal and remand) and completion of that remand trial (which resulted in entry of judgment in favor of the individual defendants, who are the Plaintiffs in this case). The latest judgments in the Underlying Action have since been appealed/cross-appealed by certain of the underlying parties as set forth in more detail below, which appeals remain pending.

The Parties disagree on how to proceed in this case now that the trial court proceedings in the Underlying Action have been completed. In sum:

- Plaintiffs' position is that (i) this insurance coverage matter should move forward in light of the current status of this case and the Underlying Action (i.e. the stay should be lifted), and (ii) this case is ready to proceed to jury trial, as the Misconduct Defenses pled by Second Layer Defendants are no longer viable in light of the 2026 Trial Court Judgment entered in their favor in the Underlying Action, and thus only the Breach of Warranty Defense remains to be adjudicated (which defense is set to proceed to jury trial per this Court's prior summary judgment ruling).[2]
- Second Layer Defendants' position is that the rationale for a stay of this Action remains until completion of the pending appeals in the Underlying Action and there is a final judgment.

The Parties submit the enclosed consolidated briefing for the Court's consideration, which includes: (i) joint factual background section describing the relevant history and procedural posture of this insurance coverage case and the Underlying Action; (ii) joint legal standard section; and (iii) position statements from each Party.

[2] The defenses referenced herein are described in further detail below (*supra* at pgs. 3-4).

## FACTUAL BACKGROUND

1) Overview of Litigation (Insurance Coverage Dispute): This insurance coverage litigation has been stayed since November 7, 2022. When the stay was entered, the Parties had completed discovery and the Court had decided the Parties' cross-motions for summary judgment. Below is a summary of (i) the Parties' operative claims and defenses, and (ii) relevant proceedings before entry of the stay.

a) Parties: Second Layer Defendants are excess insurers under policies that insure directors' and officers' liability.[3] Plaintiffs are individual insureds under those policies, who were sued in their capacity as former directors/members of the Board of Managers of Illinois River Energy Holdings, LLC ("IREH") in an action captioned *Schultz, et al. v. Sinav Ltd., et al.*, Case No. 2014 L 15 (Ill. Cir. Ct., Ogle County) (the "Underlying Action").

b) Plaintiffs' Claims and Requested Relief: On February 15, 2018, Plaintiffs commenced this action. In the operative Second Amended Complaint (Dkt. No. 62), Plaintiffs seek entry of declaratory judgment that Second Layer Defendants have a coverage obligation to Plaintiffs for claims in the Underlying Action (Count I), and assert claims for anticipatory

---

[3] The directors' and officers' liability insurance policies at issue (collectively the "Policy") provided three distinct levels of coverage during the period from February 16, 2014 to February 16, 2015:

- The first layer was provided by Lloyd's Syndicate 2003 SJC with an eroding liability limit of $5 million ("First Layer").
- The second layer was provided by Second Layer Defendants (as defined above), which coverage is triggered upon exhaustion of the First Layer, with an eroding liability limit of an additional $10 million.
- The third layer was provided by certain additional insurers (referred to herein as the "Third Layer Defendants"), which coverage is triggered upon exhaustion of the Second Layer, with an eroding liability limit of an additional $10 million.

The First Layer insurer accepted Plaintiffs' tender, and provided coverage for defense costs. The Second Layer Defendants rejected Plaintiffs' claim for coverage, and that claim is the subject of this pending action. The Third Layer Defendants also rejected Plaintiffs' claim for coverage and were initially defendants in this action until their claims were dismissed pursuant to settlement agreement (Dkt. Nos. 226 & 228).

breach of contract (Count II), breach of contract (Count III), and damages pursuant to Section 155 of the Illinois Insurance Code, 215 ILCS 5/155 (Count IV, for remedy only). As relief, Plaintiffs seek: (i) a declaration that the Second Layer Defendants have a duty to defend and indemnify under the Policy; and (ii) recovery of damages resulting from the Second Layer Defendants' breach of their coverage obligations (including defense costs incurred in the Underlying Action) and an award of statutory bad faith penalties, attorneys' fees and costs in prosecuting this action. Plaintiffs assert that as of January 31, 2026 they have incurred more than $5.5 million of defenses costs in the Underlying Action that are subject to coverage by Second Layer Defendants (i.e. costs subsequent to exhaustion of the First Layer). Second Layer Defendants have not had an opportunity for discovery into the amounts alleged by Plaintiffs (subsequent to entry of the stay in this action), and are under the belief that even if Plaintiffs have incurred $5.5 million they have been indemnified and/or reimbursed all or nearly all of such defense costs by the Entity Defendants pursuant to their corporate indemnification obligations under Delaware law.[4]

c) Second Layer Defendants have asserted certain defenses to Plaintiffs' claims in their operative answer (Dkt. No. 64), including two primary categories of affirmative defenses: (1) Second Layer Defendants assert that they do not have a coverage obligation due to Plaintiff's breach of warranty because the insurance application contained alleged misstatements and/or omissions based on its lack of disclosure of claims at issue in the Underlying Action that they allege to be facts and circumstances that any reasonable person would have recognized may give rise to a claim (the "Breach of Warranty Defense"); and (2)

[4] Plaintiffs are in the process of supplementing their prior production of supporting invoices for this amount (and updating it to be current), which they anticipate to complete in the next 1-2 weeks.

Second Layer Defendants assert that coverage is precluded by the misconduct exclusions set forth in Section 4.1 of the Policy and/or under English common law doctrines precluding insurance of losses caused by an insured's own intentional misconduct, which affirmative defenses were premised in part on the summary judgment ruling entered against the individual defendants (Plaintiffs in this case) in the original trial court proceedings in the Underlying Action (the "Misconduct Defenses").

d) The Parties completed discovery in this action, and thereafter filed cross-motions for summary judgment wherein: (i) Second Layer Defendants moved for summary judgment on the basis of the Breach of Warranty Defense; and (ii) Plaintiffs moved for partial summary judgment seeking dismissal of the Misconduct Defenses and certain other affirmative defenses, and entry of an order declaring that Plaintiffs have satisfied the affirmative elements of their declaratory judgment claim subject to ruling on the Breach of Warranty Defense at trial. On September 29, 2021, the Court denied both motions for summary judgment, and on October 5, 2021, the Court held a hearing to read its opinion into the transcript record. (Dkt. Nos. 189, 191, 193.) In accordance with this opinion, the Court denied certain arguments and requests for relief raised in the cross-motions for summary judgment (including as to the Breach of Warranty Defense), but denied other matters without prejudice subject to further supplemental briefing and ruling by the Court (specifically as to certain open issues related to the Misconduct Defenses).[5]

2) <u>Overview of Underlying Action (When Stay Entered)</u>: Below is a summary of the Underlying Action at the time the stay was entered in this insurance coverage action.

---

[5] A listing of the open issues remaining for supplemental ruling following the Court's summary judgment order is set forth in the Joint Status Report filed on October 29, 2021 (Dkt. No. 192).

a) On January 30, 2012, a majority of IREH's Board of Managers approved the majority unitholder's buyout of IREH's minority unitholders (the "Buyout"); the four Plaintiffs (in this case) voted in favor of the Buyout, and the three managers who represented the minority unitholders voted against it. On May 20, 2014, the minority managers filed the Underlying Action against the Plaintiffs (referred to as the individual defendants in that case) and multiple corporate entity defendants (the "Entity Defendants").

b) On April 11, 2018, the trial court in the Underlying Action entered partial summary judgment against the individual defendants (i.e. Plaintiffs here) on the issue of liability based upon, inter alia, a finding that they willfully breached their fiduciary duties (the "Partial MSJ Order"). On April 30, 2021, the trial court awarded compensatory damages against the individual defendants (the "Damages Order", and together with Partial MSJ Order, the "Original Judgment").

c) Following entry of the Damages Order, claims against the Entity Defendants in the Underlying Action were set for bench trial in November 2022.

3) Entry of Stay and Subsequent Developments in Underlying Action: Enclosed below is a summary of proceedings relevant to the Court's initial entry and subsequent continuation of the stay in this action, including a description of applicable developments in the Underlying Action.

a) Initial Stay Order: On June 8, 2022, Plaintiffs moved for a stay of this insurance coverage action until completion of the November 2022 bench trial in the Underlying Action, on the grounds that such a stay would streamline the issues pending in this case while avoiding undue burden on the Parties and the Court that would result from overlapping proceedings. (Dkt. Nos. 219 & 227.) This motion noted that completion of the trial court proceedings in the

Underlying Action was likely to impact open matters related to the Misconduct Defenses in this case regarding (1) whether the Original Judgment entered in the Underlying Action reached a procedural posture sufficient to constitute a "final adjudication" for purposes of applying the Section 4.1 exclusions under the Policy, and (2) whether the Original Judgment was sufficient to satisfy the remaining requirements of the Section 4.1 exclusions under the Policy and/or the elements of the alleged common law affirmative defenses to coverage. Second Layer Defendants initially opposed Plaintiffs' motion to stay based on Second Layer Defendants' then-pending Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. Nos. 216 & 224), which this Court denied (Dkt. No. 233). On November 7, 2022, the Court entered a minute entry order granting the motion to stay, stating: "this Court believed that it made sense to have the trial in the underlying action before having the trial in the insurance coverage action at hand." (Dkt. No. 229.)

b) Completion of Original Trial Proceedings in Underlying Action: A bench trial on claims against the Entity Defendants in the Underlying Action was held on November 7-17, 2022. On March 29, 2023, the trial court entered an order of judgment on the remaining counts, and on April 10, 2023, the trial court entered a judgment (the "April 2023 Judgment Order"). The April 2023 Judgment Order found the individual defendants (i.e. Plaintiffs here) and one of the Entity Defendants (defendant GTL Resources USA, Inc., "GTL USA") jointly and severally liable for damages in the amount of $11,966,903.15. After the April 2023 Judgment Order was entered, each party to the Underlying Action timely filed a notice of appeal and/or cross-appeal (collectively, the "2023 Appeal").

c) Unopposed Motion for Continuation of Stay (Pending Completion of Underlying Action Appeal): On June 15, 2023, Plaintiffs filed an Unopposed Motion for Continuation of

Stay until completion of the 2023 Appeal. (Dkt. No. 245.) In support, Plaintiffs noted that the pending appeal of the Original Judgment would directly impact open issues as to the Misconduct Defenses and that resolution of that appeal would simplify these issues for the Parties and the Court.[6] Second Layer Defendants did not oppose this continued stay request. (*Id.* at ¶ 13.) On June 20, 2023, the Court granted the motion and ordered that the stay be continued until completion of the 2023 Appeal. (Dkt. No. 246.)

d) <u>Reversal/Remand of Judgment in 2023 Appeal</u>: On April 5, 2024, the Appellate Court ruled (the "Appellate Opinion"). The Appellate Opinion affirmed in part, reversed in part, dismissed in part, and vacated in part the trial court rulings in the Underlying Action, and ordered that the case be remanded. For the claims against the individual defendants (i.e. Plaintiffs here), the Appellate Opinion reversed entry of the Partial MSJ Order and the Damages Order, and ordered a new trial on "(1) liability for monetary damages under the LLC Agreement's exculpatory provision and (2) the amount of damages for any of these defendants

---

[6] In relevant part, the motion explained that:

> Because the orders affecting both of these [open Misconduct Defenses] issues are subject to appeal, resolution of the Appeal will simplify these issues for the parties and the Court. For example, in the event that the Underlying Action Appeal reverses the Partial SJ Order (or makes any ruling, positive or negative, that impacts the judicial findings set forth therein), this Court must necessarily consider that appellate decision in ruling on the Misconduct Defenses. In addition, completion of the [2023 Appeal] is also likely to moot the outstanding question of whether it is necessary for appellate proceedings to have been exhausted in order to meet the "final adjudication" requirement of the Section 4.1 exclusion defense. If the parties were to brief these issues now, that briefing (and any Court decision) would need to be immediately supplemented to account for the result of the [2023 Appeal]. Thus, the proposed stay will both streamline and simplify resolution of these open matters.

(*Id.* at ¶ 11.)

who are found liable." The Appellate Opinion also vacated the judgment on count II as duplicative. Appellate Opinion at 54.[7]

e) Joint Request for Continued Stay During Remand Proceedings: The stay in this case was extended by agreement of the Parties and order of this Court – which provided for the stay to be continued until completion of the remand proceedings in the Underlying Action. (Dkt. Nos. 253-254, 256-265.)

f) Trial Court's Ruling on Claims Against Individual Defendants on Remand: A bench trial in the Underlying Action was held from August 11-25, 2025, on claims against the individual defendants (i.e. Plaintiffs here) and certain of the Entity Defendants. With regard to the individual defendants, the trial concerned whether the individual defendants' conduct rendered them personally liable under the LLC Agreement (and its applicable exculpatory provisions) for the claims asserted by plaintiffs. On January 15, 2026, the trial court entered its Opinion, Order & Judgment Relative to Counts I & III in the Underlying Action (the "2026 Trial Court Judgment"). For the claims asserted against the individual defendants, the trial court entered "Judgment in favor of the Individual Defendants [] as they have shown that they are exculpated from liability pursuant to the terms of the Operating Agreement." 2026 Trial Court Judgment, at 56 ¶ A.[8]

g) Additional Trial Court Proceedings on Remand: Following completion of all remand proceedings, on March 19, 2026, the trial court entered a "Final Judgment As To All Remaining Claims And Parties." As to the individual defendants (i.e. Plaintiffs here), the final

---

[7] A copy of the Appellate Opinion is attached to the Joint Status Report filed in this action on April 24, 2024 (Dkt. No. 253).

[8] A copy of the Trial Court Judgment is attached to the Joint Status Report filed in this action on January 28, 2026. (Dkt. No. 271.)

judgment was consistent with the 2026 Trial Court Judgment (*supra* at ¶ 3(f)). As to the Entity Defendants, the trial court (i) entered a final judgment order against defendant GTL USA, in favor of plaintiffs, in the amount of $11,960,356.75; and (ii) entered a final judgment order in favor of the remaining Entity Defendants, and against plaintiffs.[9]

h) Appeal of Trial Court Rulings on Remand: On March 27, 2026, plaintiffs in the Underlying Action filed a Notice of Appeal, and on March 31, 2026, plaintiffs filed an Amended Notice of Appeal (correcting a typographical error).[10] The Amended Notice of Appeal includes appeal of the 2026 Trial Court Judgment entered in favor of the individual defendants. On April 17, 2026, defendant GTL USA served and filed a notice of cross-appeal in the Underlying Action, which cross-appeal does not relate to any claims involving the individual defendants. The appeal and cross-appeal of the 2026 Trial Court Judgment remain pending (the "2026 Appeal").

i) Parties' Meet/Confer on Next Steps in Insurance Coverage Litigation: Following entry of the 2026 Trial Court Judgment, counsel for the Parties in this case have been engaged in meet and confer discussions regarding the impact of the developments in the Underlying Action on the Stay Order and the pending claims and defenses in this insurance coverage case. (Dkt. Nos. 271-277 (joint status reports and minute entry orders).) As set forth herein, the Parties disagree on how this case should proceed, and set forth their positions below.

---

[9] A copy of this March 19, 2026 order is attached to the Joint Status Report filed in this action on April 7, 2026. (Dkt. No. 274.)

[10] A copy of this Amended Notice of Appeal is attached to the Joint Status Report filed in this action on April 7, 2026. (Dkt. No. 274.)

## LEGAL STANDARD

A district court's power to stay proceedings is well-established and "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also In re Groupon Derivative Litig.*, 882 F. Supp. 2d 1043, 1045 (N.D. Ill. 2012) (quoting same). When deciding whether to grant a stay, courts should "balance the competing interests of the parties and the interest of the judicial system," and generally consider the following three factors: "(1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non-moving party." *Id.* (collecting cases).

## PARTIES' POSITION STATEMENTS

### I. Plaintiffs' Position Statement and Supporting Arguments

This insurance coverage dispute is ripe for resolution. Plaintiffs seek (i) entry of a declaratory judgment order finding that the Second Layer Defendants have a ***current*** duty to defend (and if necessary indemnify) Plaintiffs in connection with the Underlying Action, including as to payment of defense costs that are being incurred in the ongoing appeal, and (ii) recovery of more than ***$5.6 million*** in defense costs that have already been incurred by Plaintiffs that the Second Layer Defendants are obligated to pay (i.e. costs incurred subsequent to exhaustion of the First Layer).[11] In light of developments in the Underlying Action, there exists no just reason to continue to stay this action.

[11] Plaintiffs also seek entry of an award of statutory bad faith penalties, attorneys' fees and costs in prosecuting this action.

***First***, the rationale justifying the stay no longer exists. The prior stay was entered because there existed disputed legal issues regarding the Misconduct Defenses that needed to be resolved before this case could proceed to jury trial on the separate Breach of Warranty Defense – specifically as to (i) whether the Partial MSJ Order and the Damages Order (collectively the "Prior Judgment") against the Plaintiffs constituted a "final adjudication" for purposes of applying the Section 4.1 exclusions under the Policy, and (ii) if so, whether such existing orders were sufficient to satisfy the requirements of the Section 4.1 exclusions under the Policy and/or the elements of the alleged common law affirmative defenses to coverage (as the existence of liability, in and of itself, is not sufficient to trigger the exclusions). (*Supra* at pgs. 6-8.[12]) Given the overlapping timelines of the Underlying Action and this coverage case when the stay was entered, it benefited all parties to defer further proceedings in this case while the appeal and subsequent remand proceedings regarding the Original Judgment were completed. For example, it made no sense to litigate the dispute as to the meaning of "final adjudication" when the appeal in the Underlying Action was likely to be completed before (or near the same time) as that issue would be decided in this case. Nor did it make sense for the Parties to brief (and this Court to determine) whether the Original Judgment was sufficient to trigger the Policy exclusions when that judgment was on appeal (and was in fact reversed).

---

[12] The exclusions section of the Policy states as follows, in relevant part:

> 4. Exclusions. The insurer shall not be liable to make any payment . . . in connection with any claim:
>
> > 4.1 Conduct arising out of, based upon or attributable to: (i) a wrongful act intended to secure or which does secure the gaining of profit or advantage to which the insured was not legally entitled; or (ii) the intentional committing of (a) ***dishonesty or fraud***; or (b) a criminal breach of law or regulation; …
>
> ***in the event that*** any of the above is ***established by final adjudication*** of a judicial or arbitral tribunal, admission by the insured or written finding of a regulator.

Policy § 4.1 (emphasis added).

None of these considerations exist any longer. The Original Judgment was reversed and vacated on appeal, and the Trial Court Judgment has now been entered in favor of Plaintiffs (a.k.a. individual defendants) in the Underlying Action, holding them to be exculpated from liability pursuant to the terms of the IREH Operating Agreement. (*Supra* at ¶¶ 3(d) & 3(f).) Given this reversal of the Original Judgment on appeal, the Second Layer Defendants' Misconduct Defenses based on those earlier rulings must necessarily be withdrawn/dismissed – as those orders simply do not exist any longer. Moreover, the Trial Court Judgment (and factual findings set forth therein) have exonerated Plaintiffs from personal liability in the Underlying Action, and thus there exists no basis for the Second Layer Defendants to assert any Misconduct Defenses under the Policy at this stage. Because these considerations no longer exist, this is not a goose and gander situation (as Second Layer Defendants claim in arguing for continuation of the stay); instead, this is a situation in which the present circumstances dictate that it is now proper to move forward with this case.

***Second***, the Policy terms require the Second Layer Defendants to provide coverage for all defense costs (including costs incurred in connection with appeals),[13] unless and until the Policy exclusions are "established by ***final adjudication***" (Policy § 4.1, quoted *supra* at pg. 12 n.12). There has been no final adjudication against Plaintiffs in the Underlying Action (to the contrary, Plaintiffs have been found not liable in the Trial Court Judgment), and the existence of the appeal does not alter that posture. Thus, the Second Layer Defendants must provide coverage for continued defense costs under the Policy, including payment of defense costs for the current appeal and any subsequent proceedings. Plaintiffs are also entitled to recovery of the more than ***$5.6***

[13] *See* Policy § 3.9 (requiring insurers to provide cover for "defence costs" which include "reasonable costs and expenses incurred … by or on behalf of an insured after a claim is made, directly in connection with its investigation, defence, settlement or ***appeal***.…") (emphasis added).

***million*** of costs that have already been incurred in defending themselves (after exhaustion of the First Layer) in the Underlying Action. By seeking a continued stay, the Second Layer Defendants are in essence attempting to deny coverage based on the mere possibility that a court ***might*** enter a subsequent finding that could trigger Misconduct Defenses at some uncertain future date. That attempted denial is improper under the Policy.

***Third***, Second Layer Defendants will not be prejudiced in any way by proceeding during the pendency of the appeal of the Trial Court Judgment. Even ***if*** the underlying plaintiffs were successful in the appeal (which is highly unlikely given the fact-based nature of the Trial Court Judgment), ***and*** a subsequent judgment was entered against Plaintiffs on remand in a manner that satisfied the Policy exclusions, ***and*** that judgment eventually constituted a "final adjudication" such that the Policy exclusions were triggered – the Second Layer Defendants still would be able to assert their rights under the Policy exclusions at that time. Indeed, that procedure is precisely how the Policy is intended to operate – with insurance coverage for defense costs being paid until an exclusion is triggered via "final adjudication" of such claims. But any such hypothetical future ruling would be 2-3 years from now,[14] and cannot constitute grounds to delay adjudication of Plaintiffs' coverage claims now.

***Finally***, the current posture of this coverage case also favors lifting the stay. Separate from the (now defunct) Misconduct Defenses, Second Layer Defendants have claimed that coverage is not available on the basis of their Breach of Warranty Defense (which is premised upon allegations that the insurance application contained alleged misstatements and/or omissions based on its lack of disclosure of the claims at issue in the Underlying Action). Discovery is closed and the Court

[14] It is noteworthy that the prior appeal and remand proceedings took more than 21 months to complete (*supra* at pgs. 7-10), which time period would be even longer in the hypothetical scenario here as Plaintiffs likely would appeal any adverse judgment entered against them on remand.

has denied Second Layer Defendants' motion for summary judgment as to this Breach of Warranty Defense, determining that the jury must decide that disputed issue. The pending appeal in the Underlying Action will in no way impact that defense. Accordingly, the Breach of Warranty Defense is ready for trial, and there exists no reason that the Parties should further delay adjudication of that entirely separate issue.

In summary, none of the factors the Court considers warrant entry of a continued stay (*supra* at pg. 11 (Legal Standards)) given that:

1. The requested stay will not simplify any issues in question or streamline any pending issues for trial, as the Original Judgment on which the Misconduct Defenses were based has been reversed/vacated, and there no longer exists any grounds for Second Layer Defendants to assert any such Misconduct Defenses to coverage;
2. A stay will not reduce the burden of litigation on the Parties or the Court for this same reason, as the case is ready to proceed to jury trial on the Breach of Warranty Defense, which is distinct from the Misconduct Defenses and any issue on appeal in the Underlying Action; and
3. Plaintiffs (as the non-moving party) will be materially prejudiced by further delay in adjudication of its coverage claims against the Second Layer Defendants – which delay would allow Second Layer Defendants to continue to evade their coverage obligations under the Policy, both as to continued defense costs in the Underlying Action and as to the more than $5.6 million of costs that they are already obligated to cover. In contrast, Second Layer Defendants will not be prejudiced by moving forward with a jury trial in order to adjudicate their wholly separate Breach of Warranty Defense, in particular since the Policy reserves them the right to pursue any exclusions at a later date.

Simply put, the Trial Court Judgment found in favor of Plaintiffs in the Underlying Action, and there exists no just reason to require Plaintiffs to wait another 2+ years to proceed with their insurance coverage claims against the Second Layer Defendants. Accordingly, Plaintiffs respectfully request that the Court lift the stay and that this action proceed to jury trial.

## II. <u>Second Layer Defendants' Position Statement and Supporting Arguments:</u>

The Second Layer Defendants respectfully submit that continuing the stay is governed by the time-honored principle that 'what's good for the goose is good for the gander.'

When Plaintiffs were faced with a non-final judgment in the Underlying Action that was adverse to them, they favored a stay. For example, Plaintiffs previously advocated as follows:

> [A] stay will simplify and streamline the remaining issues in this action – in particular as pertains to the Defendants' alleged Misconduct Defenses . . . .Because the orders affecting both of these issues are subject to appeal, resolution of the Appeal will simplify these issues for the parties and the Court.

(Pl.'s Unopposed Mot. For Continuation of Stay at 3-4 (Dkt. #245).) But now that they have a non-final judgment in the Underlying Action that they see as advantageous to them, Plaintiffs oppose continuing the stay.

The Second Layer Defendants respectfully submit that the rationale for the stay remains because there is still a non-final judgment in the Underlying Action that is the subject of a pending appeal (and cross-appeal). In Plaintiffs' own words, "resolution of the Appeal will simplify these issues for the parties and the Court." (*Id.*) To build upon the point a step further, Plaintiffs' Unopposed Motion for Continuation of Stay added that "the requested stay will reduce the costs and burdens of litigation by ensuring that the parties and the Court do not unnecessarily expend resources in briefing and adjudicating open matters pertaining to the Misconduct Defenses that the Underlying Action Appeal will materially impact . . . ." (*Id.* at 4.) This remains true today.

The Second Layer Defendants respectfully submit that continuing the stay until the 2026 Appeal concludes is the prudent (and most fair) course of action.

## CONCLUSION

Consistent with the Parties' most recent Joint Status Report filed on May 26, 2026 (Dkt. No. 277), the Parties respectfully request that the Court set an in-person or telephonic status hearing to be held the week of June 9, 2026 (or at such other date as the Court prefers) for hearing and ruling on the pending dispute addressed in this consolidated briefing.

Dated: June 3, 2026

Respectfully submitted,

By: /s/ *Erik J. Ives*

Erik J. Ives (ARDC #6289811)
eives@foxswibel.com
Daniel A. Dorfman (ARDC #6286059)
ddorfman@foxswibel.com
Ashley K. Martin
amartin@foxswibel.com (ARDC # 6297126)
Fox Swibel Levin & Carroll LLP
200 W. Madison St., Suite 3000
Chicago, IL 60606

*Counsel for Plaintiffs Richard H. Ruebe, Jeffrey W. Lemajeur, Vincent J. Kwasniewski and Neal T. Jakel*

By: */s/ John C. Gekas*

John C. Gekas, Esq.
John.Gekas@saul.com
Amy S. Kline, Esq.
Amy.Kline@saul.com
SAUL EWING ARNSTEIN & LEHR LLP

161 North Clark Street, Suite 4200
Chicago, IL 60601
Tel: (312) 876-7864
Fax: (312) 876-7312

*Counsel for Defendants Bothnia International Insurance Company Limited, and ANV Corporate Name Limited the Underwriting Member of ANV Syndicate 1861 at Lloyd's for the 2014 Year of Account*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on June 3, 2026, he caused the foregoing document to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF system, which is also served upon counsel for all parties of record.

*/s/ Erik J. Ives*